IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROBERT C. REYNOLDS, | : |
| Petitioner, | : |
| v. | : CIVIL ACTION NO. |
| | : 1:03-CV-0320-JOF |
| BRUCE CHATMAN, Warden, | : |
| Respondent. | : |

## OPINION AND ORDER

This matter is before the court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1-1]; the Report and Recommendation of Magistrate Judge Susan S. Cole [6-1]; and Petitioner's objections thereto [7-1].

**I.   Background**

  **A.   Procedural History**

Petitioner, Robert C. Reynolds, was convicted on one count of rape and acquitted on another count after a jury trial. Petitioner filed a direct appeal in which he alleged that the trial court abused its discretion in failing to sever the two rape charges. Petitioner's conviction and sentence were affirmed on appeal. *See Reynolds v. State*, 234 Ga. App. 599 (1998). Petitioner filed a state habeas corpus petition on September 23, 1999, and later amended the petition several times. The state court held an evidentiary hearing on September

AO 72A
(Rev.8/82)

20, 2000, and the habeas court denied the petition on June 3, 2002. The Georgia Supreme Court denied Petitioner's application for a certificate of probable case. Petitioner filed the instant federal habeas application on February 3, 2003. On November 1, 2005, Magistrate Judge Susan S. Cole issued a Report and Recommendation in which she recommends that Petitioner's habeas application be denied.

The Report and Recommendation of the Magistrate Judge sets forth the facts concerning Petitioner's criminal conviction. The court will review them here only to the extent relevant to Petitioner's objections. Petitioner was accused of raping two women on separate occasions. One was a young woman he met at the mall and again later the evening of November 27, 1993. The young woman testified that they eventually went to Petitioner's parents' home where he raped her in his bedroom. The other victim was a roommate who shared Petitioner's parents' house. She testified that she and Petitioner had been roommates for some time but had no prior sexual relationship. However, one evening, April 3, 1994, Petitioner forced her from the living room to his bedroom and raped her. Petitioner's defense at trial was that the two encounters were consensual. As might be expected with this theory of defense, Petitioner testified at the trial. As the court noted above, this strategy was partially successful as the jury convicted Petitioner of rape only with respect to the first victim, but not the second.

At trial, Petitioner was represented by Bobby Lee Cook and Ed Carriere. On state appeal, he was represented by Marcia Shein. During the state habeas and the instant federal habeas proceedings, Petitioner has been represented by Sandor S. Badaruddin.

In his federal habeas application, Petitioner contends that he was denied effective assistance of appellate counsel because his counsel failed to raise on appeal claims that: (1) his Fifth Amendment right to remain silent was violated because the trial court failed to sever the two rape counts and Petitioner only wanted to testify as to one count, (2) his Fifth Amendment right to remain silent was violated when one of the rape victims called him at the behest of the police and recorded the telephone conversation, (3) his Fifth and Sixth Amendment rights to counsel were violated because he did not have counsel present during that telephone conversation, (4) his due process rights were violated by the prosecutor's statements at trial that (a) Petitioner's counsel was skillful and intimidating and (b) Petitioner's witnesses at trial had not informed the police of certain information immediately when they became aware of it, and (5) the cumulative effect of these errors constituted a violation of Petitioner's Fourteenth Amendment right to due process and a fair trial.

### B.     State Habeas and Report and Recommendation

The state habeas court held an evidentiary hearing at which the only witness to testify was Petitioner's appellate counsel, Ms. Shein. She stated she had reviewed the entire trial record and selected the most important issue she could to get Petitioner a new trial. She concluded the severance issue was the most promising. Ms. Shein also testified that

Petitioner never told her he had wanted to testify only with respect to one of the rape charges. After the hearing, the state court applied *Strickland* and ruled that Petitioner's appellate counsel was not ineffective for failing to raise the Fifth Amendment severance issue because Petitioner never testified that he wanted only to testify with respect to one of the rape counts. As such, the state court concluded that there was no evidence to show that Petitioner did not freely and voluntarily waive the privilege against self-incrimination.

The state habeas court also rejected Petitioner's contention that his right to remain silent and right to counsel were violated through the admission of a recorded telephone conversation from the first victim on the afternoon after the attack. The court held that Petitioner could not demonstrate he was "in custody" when he made the incriminating statements to the victim, and the victim was under no obligation to inform Petitioner of the right against self-incrimination, citing *Illinois v. Perkins*, 494 U.S. 292 (1990), and *Miranda v. Arizona*, 384 U.S. 436 (1966). Finally, the state court found that Petitioner had not proffered any evidence to demonstrate that his incriminating statements were involuntary or coerced.

The state court also rejected Petitioner's argument that several comments made by the prosecutor during closing arguments were improper, including (1) that defense counsel was good at what he does and was intimidating, (2) arguing that if the jury concluded the victims were raped, it should have the courage and willingness to stick up for them and do justice on their behalf, and (3) commenting that Petitioner's family, who testified on behalf of

4

Petitioner, could have brought facts to the attention of the police earlier. Finding that the comments did not "so infect" the trial with unfairness, the state court concluded that it was reasonable for Petitioner's appellate counsel to choose not to raise them on appeal, citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). The state court further explained that Petitioner had not shown the prosecutor's arguments improperly commented on the accused's right to remain silent, citing *Griffin v. California*, 380 U.S. 609, 615 (1965).

**II.     Discussion**

In their briefing, the parties agree on the framework of a federal habeas review of a state court conviction, pursuant to 28 U.S.C. § 2254(d) and explained in *Williams v. Taylor*, 529 U.S. 362 (2000). The parties also agree that the state habeas court applied the correct law under *Strickland* and *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983), concerning ineffective assistance of appellate counsel. Petitioner, however, argues that the state habeas court judge's application of that law to Petitioner's case was objectively unreasonable. *See Woodford v. Visciotti*, 537 U.S. 19 (2002) (noting, however, that an unreasonable application of the law is different than an incorrect application).

AO 72A
(Rev.8/82)

### A.   Severance

On direct appeal of his state conviction, Petitioner's appellate counsel did argue that the trial court erred in concluding that the two rapes were sufficiently similar so as to warrant trying them together. Petitioner refers to this as the *Dingler* severance issue. *See Dingler v. State*, 233 Ga. 462 (1975). The state appellate court, however, found that the trial judge had not abused his discretion in denying Petitioner's motion to sever. Petitioner argues now that his appellate counsel ignored the more fruitful manner in which the situation could have been challenged – that his Fifth Amendment constitutional rights were violated because he was forced either to testify as to both charges or remain silent as to both charges. Petitioner refers to this as a *Cross* severance issue. *See Cross v. United States*, 335 F.2d 987 (D.C. Cir. 1964).

Petitioner's argument, however, does not make logical sense in the fabric of the case. Petitioner's defense at trial to **both** rapes was that they were consensual. Such a defense generally would be enhanced by the testimony of the defendant. There is nothing so strategically different in the two accusations that would warrant a different decision on whether to testify.

In his objections, Petitioner's counsel argues that "the need for silence as to count one, and the need for testimony on count two was apparent from the record at trial." Objections, at 7; *see also id.*, at 9 ("Petitioner's need to testify with regard to Count Two is evident from

AO 72A
(Rev.8/82)

the transcript of his trial."). The court does not agree that the situation was so obvious. Petitioner later argues that the "only evidence before the jury on Count Two was the denial and explanation of the Petitioner, and the accusation of the victim." *Id.* "With regard to Count One, . . . Petitioner's testimony was far less convincing. Petitioner was unable to explain critical state's evidence and the prosecutor's efforts at impeachment and cross-examination were very fruitful." *Id.* Again, Petitioner's counsel does not explain to the court what this "critical state's evidence" was. The first victim did go to the hospital, and there were medical records concerning her physical state on the day in question. However, since Petitioner's defense was that the sex was consensual, the existence of the medical records, alone, would not defeat his theory of defense so as to make his own testimony untenable. It seems, then, that Petitioner's counsel is arguing that because the jury acquitted Petitioner of the second count of rape, it is obvious that he had to testify with respect to the second count, but because it convicted on the first count, he should not have testified in defense of that accusation. *Id.* at 9-10. Such circular, post-hoc rationalization, however, does not demonstrate that the state habeas court's ruling was an objectively unreasonable application of *Strickland* and *Jones* to the facts of Petitioner's case.

Most significant to the court is that Petitioner presents no evidence at all that at the time of trial he desired only to testify as to one incident and not the other. Nothing in the record shows that Petitioner or his trial counsel contemplated this issue. Petitioner never

7

raised it with his appellate counsel.[1] Finally, Petitioner's current counsel represented Petitioner at his state habeas evidentiary hearing yet never called Petitioner to testify at the hearing. No other witnesses testified that Petitioner had desired to testify on his own behalf with respect to only the second count and not the first count. Petitioner submitted no affidavit in conjunction with the federal proceedings making such an assertion. Thus, the court must conclude that Petitioner's Fifth Amendment theory is purely hypothetical and was never an issue actually faced by Petitioner's trial or appellate counsel. As such, the court finds that Petitioner has not demonstrated that the state habeas court's application of the law to the facts in Petitioner's case was objectively unreasonable and Petitioner's appellate counsel was not ineffective for focusing on the *Dingler* aspect of the severance, rather than the *Cross* aspect.

### B. Tape Recorded Conversation

Whether couched in terms of the Fifth or Sixth Amendment, Petitioner essentially argues that the police violated his constitutional rights when they encouraged the first victim to call Petitioner and record the conversation, a tape of which was used during Petitioner's trial. As an initial matter, it appears to the court that several taped conversations took place between the first victim and Petitioner, including one on the afternoon following the attack in which Petitioner called the victim and said, among other things, "I know I hurt you" and he

---

[1]Petitioner is correct, of course, that he is not responsible for identifying grounds of appeal for his counsel. However, the factual basis for this alleged ground of appeal was within the possession of Petitioner. Nothing in the record would have indicated to Petitioner's appellate counsel that he had only wanted to testify as to one count.

8

wanted to "fix it." In his objections, Petitioner refers to a telephone conversation that happened in April 1994, approximately six months after his arrest. It is not clear to the court the degree to which the April conversation differed from the one the day after the incident with the first victim.

In any event, it is far from clear that the tape recordings were a constitutional violation. The state habeas court cited *Wilson v. State*, 264 Ga. 287 (1994), when it concluded that Petitioner has not established a violation. *Wilson* thoroughly investigates the United States Supreme Court authorities concerning the Fifth and Sixth Amendment rights to counsel before, during, and after coercive interrogation. In his objections, Petitioner argues only that his appellate counsel was ineffective in failing to raise this issue. However, that is not the standard on federal review. Petitioner must demonstrate that the state habeas court's application of the law to Petitioner's facts was objectively unreasonable and Petitioner has not done that. *See also Illinois v. Perkins*, 494 U.S. 292 (1990) (holding that undercover law enforcement agent posing as cell mate not required to give *Miranda* warnings to defendant before asking questions that could elicit incriminating response; also noting that defendant had no reason to believe that cell mate had legal authority to force him to answer questions).

### C.   Prosecutor's Comments and "Cumulative" Effect

In his closing argument, the prosecutor commented:

> [T]he defense comes in with some witnesses. Two family members, three family members, and that's pretty much it . . . . Now the family members, sure enough, are going to say the cops didn't ask us any questions. And that appears

9

>to be the case. We can't refute that. At the same time, they could have gone to the cops. At some point, they figured out, what's the deal here, we now know when this was supposed to have taken place. We can go to the cops. . . . Given the opportunity to do that on behalf of their son, did they avail themselves of it? No. They scurried away like frightened rats. Didn't come forward and tell the folks in law enforcement what it is they know. And now, this long after the fact, they come before you and say, oh, our son, gosh, no, of course he wouldn't do that. Our son would never do that.

Trial Transcript, at 1044-46. The state habeas court held that the comments did not "so infect" the trial with unfairness that it was unreasonable for Petitioner's appellate counsel to choose not to raise them on appeal.

In his objections, Petitioner argues that the "prosecutor, by stating that Petitioner should have presented his witnesses to the police and district attorney's office, was making an improper comment on the Petitioner's right to remain silent after arrest." Objections, at 21. The court disagrees with Petitioner's characterization of the prosecutor's closing argument. The prosecutor's argument did not reflect on Petitioner's right to remain silent. Rather, the prosecutor's argument went to the credibility and weight of the testimony of Petitioner's family members, a matter within the fair view of the prosecutor. Furthermore, as with his other claims, Petitioner has offered no reason why the state habeas court's ruling was an objectively unreasonable application of law to the facts in Petitioner's case.

Finally, Petitioner now raises for the first time a claim that the cumulative effect of all of these errors violated his due process rights. *See United States v. Preciado-Cordobas*, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993). Pretermitting the procedural bars on this new

10

claim, the court finds that it is without merit. In the end, this case was about the credibility of Petitioner's account of the incidents in question in relative comparison to the credibility of his alleged victims. Petitioner has proffered no evidence to show that the combination of these alleged errors denied him a fair trial. *See also Cargill v. Turpin*, 120 F.3d 1366, 1386-87 (11th Cir. 1997) (where court determined state trial not fundamentally unfair, court refused to entertain "cumulative error" claim).

For the foregoing reasons, the court ADOPTS the Report and Recommendation of the Magistrate Judge as the ORDER of this court. The court DENIES Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### III. Conclusion

The court ADOPTS the Report and Recommendation of Magistrate Judge Susan S. Cole [6-1]. The court DENIES Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1-1].

**IT IS SO ORDERED** this 23rd day of March 2006.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)